**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fire Security Electronics & Communications Incorporated, | No. CV-23-02730-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Nicholas Nye, et al., | |
| Defendants. | |

On December 29, 2023, Plaintiff Fire Security Electronics & Communications Inc. ("FSEC") initiated this action against two of its former employees, Defendants Nicholas Nye and Christopher Boone, asserting the following claims for relief: (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 e*t seq.*, and Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401 *et seq.*; (3) breach of contract; (4) breach of implied duty of good faith and fair dealing; (5) breach of fiduciary duty and duty of loyalty; (6) replevin; and (7) tortious interference with contractual relationship. (Doc. 1.) That same day, FSEC also filed a motion for a preliminary injunction, asking the Court to: (1) prohibit Nye and Boone from possessing, sharing, and using FSEC's confidential company information; (2) prohibit Boone from further soliciting FSEC's customers and employees; and (3) require Nye and Boone to turn over their electronics devices and accounts to a third-party forensic expert—which Defendants would pay for—and have the forensic expert delete all of

FSEC's confidential information in those devices and accounts. (Doc. 4.) The motion is fully briefed. (Docs. 4, 20, 22.) Following an evidentiary hearing on February 2, 2024, the Court took this matter under advisement. For the reasons herein, the Court grants the preliminary injunction in part.

## I.       BACKGROUND

FSEC is a fire safety company in Phoenix, providing fire system installation, testing and inspection services, repair and maintenance services, and fire extinguisher maintenance to residential and commercial sites throughout Arizona. (Doc. 4-2 at 3.) FSEC uses an online inspection portal, called "Building Reports," to store and maintain information about its clients and projects. (*Id.*) These Building Reports contain site specific material lists, number and location of safety devices, inspection reports, equipment quantities, customer preferences/ requirements, and customer account information. (*Id.*) FSEC uses the information in the Building Reports to bid prospective jobs, perform services for existing clients, analyze client needs, and generate customer reports. (*Id.*) FSEC has created and used these Reports over the last 19 years. These Reports are not generally accessible by the public, and employees at FSEC require a unique username and password to access them. (*Id.* at 6.) FSEC alleges these Reports constitute trade secrets and contain confidential and sensitive information. (Doc. 1.)

Nye and Boone are former FSEC employees and presently work at one of FSEC's competitors, ADANAC Fire Protection. (Doc. 4-2 at 4–6.) FSEC claims that Nye and Boone have misappropriated FSEC's confidential and trade secret information and have violated their contracts with FSEC. (Doc. 1)

Nye worked as an inspector and service technician at FSEC from April 2012 until his resignation on September 6, 2023. (Doc. 4-2 at 4–6.) During Nye's employment, FSEC provided Nye with a 2023 Employee Handbook and Confidentiality Policy, both of which stated that sensitive company information may not be disclosed to any unauthorized person inside or outside of FSEC. (*Id.* at 22, 52.) Though FSEC alleges these documents constitute a contract with Nye, the Employee Handbook states on every page, "THIS IS NOT A

1    CONTRACT." Nye acknowledged receipt of both the Handbook and the Confidentiality
2    policy. (*Id.*at 10, 12.)

3          In September 2021, Nye became an embedded technician for the City of Scottsdale,
4    so most of his work centered around repair of the City's video and access control systems.
5    (*Id.* at 4.) FSEC alleges that Nye no longer needed the Building Reports for his work with
6    the City, yet Nye's login credentials continued to be used to access and generate Building
7    Reports. (*Id.*) FSEC notes that even when Nye was on vacation abroad, his login credentials
8    were being used here in Arizona to access these Building Reports. (*Id.*)

9          Between September 2021 and May 2023, Nye's login credentials were used only
10   three times to access Building Reports. In May 2023, Nye began contemplating leaving
11   FSEC to find work elsewhere. From May 2023 until October 26, 2023 (the date FSEC
12   officially revoked Nye's login credentials), Nye's credentials were used 99 times. (Doc.
13   22-1 at 3.) Among those 99 various logins, 700 Building Reports were accessed, and 22
14   Reports were downloaded. (*Id.*) FSEC claims that Nye, or someone authorized by Nye,
15   accessed FSEC's Building Reports without authority and therefore unlawfully accessed
16   FSEC's sensitive company information and trade secrets. (Doc. 1)

17         At the evidentiary hearing, Nye testified that it was common for FSEC employees
18   to share login credentials with one another—that sharing credentials allowed multiple
19   technicians on one job to create a uniform, cohesive, and professional Report for the
20   customer. Nye claims that over his 11 years of work with FSEC, he shared his login
21   credentials with 10 to 15 other FSEC inspectors and that no one at FSEC ever instructed
22   him against sharing login credentials. (Doc. 20 at 56.)

23         Starting in January 2021, Boone worked as a Service and Inspections Manager
24   beginning at FSEC. (*Id.* at 25.) As part of his role, Boone managed service and inspection
25   technicians in Phoenix and Tucson, set prices for FSEC's services, created invoices, and
26   ordered materials and equipment. (*Id.*) While at FSEC, Boone signed an Employment
27   Agreement. (Doc. 4-2 at 54–59.) The Agreement contained a confidentiality clause and
28   restrictive covenants. As relevant here, the covenants include: (1) a two-year covenant not

1    to solicit or interfere with FSEC's known or prospective customers and (2) a two-year

2    covenant not to solicit or hire FSEC employees. (*Id.*) Boone submitted his two-week notice

3    to FSEC on February 13, 2023, but FSEC terminated him the day after and instructed him

4    to leave immediately. (Doc. 20 at 25.) Shortly after, Boone started working for ADANAC.

5            FSEC alleges that Boone, in coordination with Nye, used FSEC's Building Reports

6    to solicit and interfere with at least three of FSEC's known customers. (Doc. 4-2 at 6.) At

7    the hearing, FSEC presented evidence that on July 31, 2023, at 10 AM, Boone met with a

8    representative from Optima Camelview Village, an FSEC client, regarding work Optima

9    was seeking from ADANAC. At the same time Boone was meeting with Optima, Nye's

10   login credentials were being used to access FSEC's Building Reports for Optima. For

11   approximately one hour, Nye's credentials were used to review the Reports for every single

12   one of Optima's buildings. FSEC also alleges that, in violation of his restrictive covenant,

13   Boone has solicited nearly every employee at FSEC and has hired at least six former-FSEC

14   employees at ADANAC. (*Id.*)

15           In response, Boone testified that he did not solicit or initiate contact with the three

16   customers that FSEC claims he poached; rather, these three customers reached out to

17   Boone on their own and requested work and bids from ADANAC. Boone also testified that

18   he did not solicit FSEC employees; rather, employees reached out to him and asked if

19   ADANAC was hiring. Boone further testified that though he responded to inquiries from

20   FSEC employees about whether ADANAC was hiring, Boone was not in charge of hiring

21   at ADANAC, did not encourage FSEC employees to apply for work at ADANAC, and did

22   not make any hiring decisions on behalf of ADANAC.

23       **II.    LEGAL STANDARD**

24           For a court to grant a preliminary injunction, a plaintiff must establish that: (1) it is

25   likely to succeed on the merits of its claim; (2) it is likely to suffer irreparable harm absent

26   the preliminary injunction; (3) the balance of equities tips in its favor; and (4) a preliminary

27   injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

28   20 (2008). A court examines these elements along a sliding scale, meaning that a stronger

1    showing of one element may offset a weaker showing of another, although all elements

2    must still be met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

3    The movant bears the burden of proof on each element. *L.A. Memorial Coliseum Comm'n*

4    *v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

5      **III.   DISCUSSION**

6          **A. Likelihood of Success on the Merits**

7             1.  <u>Misappropriation of Trade Secrets</u>

8         Starting with FSEC's trade secret misappropriation claims, the Court finds that

9    FSEC has sufficiently establish a likelihood of success on the merits. To prevail on a DTSA

10    and AUTSA claim, a plaintiff must prove that (1) it possessed a trade secret that was (2)

11    misappropriated by the defendant (3) causing damages. *See Gordon Grado M.D., Inc. v.*

12    *Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 809, 812

13    (D. Ariz. 2022); *Berkadia Real Estate Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-

14    CKJ, 2022 WL 3213113, at *12 (D. Ariz. Aug. 9, 2022) ("The elements of a trade secret

15    misappropriation claim under the DTSA and AUTSA are virtually identical."). To

16    constitute a trade secret, the owner must have "taken reasonable measures to keep such

17    information secret." 18 U.S.C. § 1839(3); A.R.S. § 44-401(4). The information must not

18    be "readily ascertainable through proper means" and must derive "independent economic

19    value from not being generally known." 18 U.S.C. § 1839(3); A.R.S. § 44-401(4).

20         FSEC can likely prevail in establishing that its Building Reports are trade secrets.

21    Collectively, FSEC's Reports list all of FSEC's clients serviced over the last 19 years, a

22    service and inspection history at each site, and a list of all devices and systems installed

23    and their respective locations at each site. FSEC has taken steps to maintain the secrecy of

24    these Reports, such as by instituting a confidentiality policy and by issuing a unique

25    username and password for each employee. Defendants contend that Reports do not qualify

26    as trade secrets because the information contained in each report "can be obtained by

27    visiting the facility of FSEC's customers or by asking the customer for the information."

28    (Doc. 20 at 10–11.) The Court is not persuaded. The evidence supports that the only way

1    to obtain the same quantity and level of specificity of information contained in the Building

2    Reports would be for an employee to visit every single client's various facilities and walk

3    the grounds to locate all devices and systems installed. "[W]here the party compiling the

4    customer lists, while using public information as a source, . . . expends a great deal of time,

5    effort, and expense in developing the lists and treats the lists as confidential in its business,

6    the lists may be entitled to trade secret protection." *Pyro Spectaculars N., Inc. v.* Souza,

7    861 F. Supp. 2d 1079, 1089 (E.D. Cal. 2012). Although the information in the Building

8    Reports may be ascertainable, FSEC can likely show that it is not *readily* ascertainable

9    since a "third party wishing to duplicate the information could not do so without investing

10   a significant amount of time, effort, and expense." *Id.* at 1090.

11        FSEC is also likely to succeed on establishing the last two elements of their DTSA

12   and AUTSA claims: misappropriation and damages. The DTSA and AUTSA define

13   misappropriation as: (1) the acquisition of a trade secret of another by a person who knows

14   or has reason to know that the trade secret was acquired by improper means; or (2) the

15   disclosure or use of a trade secret of another without express or implied consent by a person

16   who (i) used improper means to acquire knowledge of the trade secret or (ii) knew or had

17   reason to know that the knowledge of the trade secret was derived through improper means

18   or acquired under circumstances giving rise to a duty to maintain the secrecy of the trade

19   secret. 18 U.S.C. § 1839(5); A.R.S. § 44-401(2). Here, the evidence reflects that between

20   September 2021 and May 2023, Nye's login credentials were used only three times to

21   access FSEC's Building Reports. Yet, from May 2023 until October 2023, Nye's

22   credentials were used 99 times to access approximately 700 Reports and to download 22

23   Reports. The record also shows that this significant increase in Building Report access

24   corresponds with when Nye began contemplating leaving FSEC to find work elsewhere.

25   There is also evidence that on July 31, 2023, at the same time that Boone, on behalf of

26   ADANAC, was meeting with Optima—an FSEC client—Nye's login credentials were

27   used for an hour to access the FSEC's Building Reports for Optima. Collectively, this is

28   sufficient circumstantial evidence for the Court to find that FSEC can likely to succeed on

1    the merits of its claim that Nye and Boone misappropriated its trade secrets. *See e.g.*,
2    *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1207 (E.D. Cal. 2020)
3    (finding that evidence indicating that former employees copied files at the time of their
4    departure or shortly thereafter strongly suggested that employees intended to use those files
5    in their subsequent employment). The Court also finds that FSEC can likely establish that,
6    because of this misappropriation, it has lost business from at least three clients and
7    therefore has suffered damages.[1]

8                              2.  Breach of Contract

9            To prove breach of contract, a party must establish: (1) the existence of a contract
10   between the plaintiff and defendant; (2) breach of the contract by defendant; and (3)
11   resulting damage to the plaintiff. *Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1125
12   (D. Ariz. 2010). The Court finds that there are serious questions going to the merits of
13   FSEC's breach of contract claim against Nye. FSEC claims that by sharing his login
14   credentials and by accessing and using the Building Reports without authorization, Nye
15   breached the confidentiality provision contained within the Employee Handbook. It is not
16   clear, however, that the Handbook is an enforceable contract given that every page of the
17   Handbook states "THIS IS NOT A CONTRACT." Although Nye acknowledged receipt of
18   the Handbook and Confidentiality Policy, it is not clear whether the parties intended to
19   bind themselves or that the confidentiality provision was a mutually understood condition
20   of employment. *Roberson v. Wal-Mart Stores, Inc.*, 44 P.3d 164, 169 (Ariz. App. 2022)

21
22          [1] The Court does not reach the merits of FSEC's CFAA claim, breach of fiduciary
     duty and duty of loyalty claim, and tortious interference with contractual relationship claim
23   because any injunctive relief would be co-extensive with the relief afforded based on
     FSEC's misappropriation of trade secrets claims. In other words, to the extent the former
24   three claims are grounds for enjoining Defendants from their alleged continued use and
     disclosure of confidential information, the misappropriation of trade secrets claims are
25   sufficient to sustain the preliminary injunction. *See Shawarma Stackz LLC v. Jwad*, N0.
     21-CV-01263-BAS-BGS, 2021 WL 5827066, at *19 (S.D. Cal. Dec. 8, 2021) ("The Court
26   need not reach the merits of the remaining state torts claims that SSL raises because the
     Lanham Act claim and the UCL claim are sufficient to sustain a preliminary injunction.").
27   Moreover, as discussed in Section III.B of this order, FSEC has not demonstrated that the
     loss of customers relationships is an irreparable harm likely to occur absent injunctive
28   relief. Thus, irrespective of the merits of the CFAA, breach of fiduciary duty, and tortious
     interference claims, FSEC has not established the requisite harm to justify enjoining
     Defendants from soliciting FSEC's customers.

1   ("Disclaimers in personnel manuals that clearly and conspicuously tell employees that the
2   manual is not part of the employment contract . . . 'do not give employees any reason to
3   rely on representations in the manual.'"). That said, the inclusion of disclaiming language
4   in a manual is not necessarily dispositive of whether there is an enforceable contract: "For
5   example, contrary oral or written assurances . . . during employment may constitute an
6   implied contract." *Id.* Thus, the Court finds that there are serious questions going to the
7   merits of whether Nye had an enforceable contract with FSEC and, if so, whether he
8   breached said contract.

9       As for Boone, FSEC's contract claim appears based on three provisions of his
10   Employment Agreement: (1) the confidentiality clause; (2) the covenant not to solicit or
11   interfere with customers; and (3) the covenant against solicitation or hiring of FSEC
12   employees. (Docs. 1, 4.) Boone does not dispute that he entered into a contract with FSEC;
13   rather, Boone contends that the contract is unenforceable because the covenants contained
14   therein are unreasonable. (Doc. 20 at 11.)

15       The Court finds that FSEC is likely to succeed on its claim that Boone violated the
16   confidentiality provision of his Employment Handbook, which provides that he "shall not,
17   at any time during his . . . employment or after termination of his . . . employment, directly
18   or indirectly, publish, disclose, use, disseminate, distribute, or otherwise make available to
19   any person or entity . . . [FSEC's] Confidential Information." (Doc. 4-2 at 55.) The same
20   evidence supporting FSEC's misappropriation of trade secrets claims also supports this
21   part of FSEC's contract claim—there is sufficient circumstantial evidence in the record to
22   conclude that FSEC can likely establish that Boone used FSEC's confidential information
23   after he was terminated in violation of his Employment Agreement.

24       As for the breach of contract claims based on the restrictive covenants, FSEC has
25   failed to demonstrate a substantial likelihood that the restrictive covenants are reasonable
26   and therefore enforceable. The non-solicitation of customers covenant provides that for a
27   period of two years after the termination of Boone's employment at FSEC, he may not:
28
            call upon, solicit or in any manner contact for the purpose of
            soliciting any Known Customer or Prospective Customer of

1
2
3

> [FSEC], or . . . do or refrain from doing anything that would interfere with, diminish, impair or otherwise adversely affect [FSEC's] relationship with any Known Customer or Prospective Customer of [FSEC].

4   (Doc. 4-2 at 57.) The non-solicitation of employees covenant provides that for a period of

5   two years after the termination of Boone's employment, he may not:

6
7
8

> directly or indirectly . . . hire any employee or independent contractor of [FSEC] or induce or attempt to induct or attempt to influence any employee, agent or independent contractor of [FSEC] to terminate his or her employment or contract to work for [FSEC].

9   (*Id.*) Boone argues that both covenants are unreasonable in duration and are overly broad.

10  (Doc. 20 at 11.)

11      "A restrictive covenant . . . is enforceable as long as it is not broader than necessary

12  to protect the employer's legitimate business interest." *Bilb, Rogal & Hamilton Co. v.*

13  *McKinney*, 946 P.2d 464, 467 (Ariz. Ct. App. 1997). "When the restraint is for the purpose

14  of protecting customer relationships, its duration is reasonable only if it is no longer than

15  necessary for the employer to put a new man on the job and for the new employee to have

16  a reasonable opportunity to demonstrate his effectiveness to the customers." *Valley Med.*

17  *Specialists v. Farber*, 982 P.2d 1277, 1284 (Ariz. 1999). "Though determining

18  the reasonableness of a restrictive covenant is 'a fact-intensive inquiry that depends on

19  weighing the totality of the circumstances,' it is ultimately a question of law." *Zep, Inc. v.*

20  *Brody Chem. Co., Inc.*, No. CV-09-0505-PHX-NVW, 2010 WL 1381896, at *5 (D. Ariz.

21  Apr. 6, 2010) (quoting *Farber*, 982 P.2d at 1280–81). "If it is clear from its terms that a

22  contract was intended to be severable, the court can enforce the lawful part and ignore the

23  unlawful part." *Id.* This is called the "blue pencil rule" in Arizona and under this rule, "a

24  court can eliminate 'grammatically severable, unreasonable provisions,' but cannot add

25  terms or otherwise rewrite unenforceable restrictive covenants." *Id.*

26      The Court does not find it likely that FSEC can succeed in showing that the two

27  restrictive covenants—non-solicitation of customers and employees—are reasonable in

28  scope of the activity prohibited and duration. For one, the non-solicitation of customers

covenant does not merely limit Boone's ability to solicit FSEC customers—it prohibits him from doing anything that could diminish or affect FSEC's relationship with its customers. This is likely overly broad. Under these terms, Boone—as a manager at ADANAC—could seemingly be prohibited from assigning inspectors and technicians onto jobs for an ADANAC customer that also happens to be FSEC's current or even prospective customer. *See Berkadia Real Estate Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-JCH, 2022 WL 18495279, at *15–17 (D. Ariz. March 3, 2022) (finding plaintiff failed to establish likelihood of enforceability of covenant where non-solicitation of customers covenant was without regard to whether defendant had any preexisting relationship with that customer). What's more, there is no evidence that FSEC has exclusive contractual relationships with any of its customers, which is a "factor [that] weighs against a finding that [p]laintiff is likely to succeed on the merits of its claim regarding [a] Customer Non-Solicitation Covenant." *Id.* at *14; *see also Garcia v. Office Keepers LLC*, No. CV 07-03032-PHX-DGC, 2018 WL 1046783, at *5 (D. Ariz. Feb. 26, 2018).

As to the non-solicitation of employees, Boone would be prohibited from, directly or even indirectly, hiring any of FSEC's employees irrespective of (1) when that employee severed his or her relationship with FSEC and (2) the extent of Boone's relationship, if any, with that employee during Boone's employment at FSEC. *Zep*, 2011 WL 1381896, at *5 ("The employee non-solicitation covenants are similarly overbroad. They purport to prevent former sales representatives from soliciting any of Zep's employees no matter the extent of the sales representative's relationship, if any, with that employee.").

FSEC also does not demonstrate the likelihood that the duration of both covenants is reasonable. The evidence presented at the hearing reflects that it would take several months if not a year or more for FSEC to find someone with Boone's credentials. Yet, there is no evidence that two years is necessary to safeguard FSEC's interest in either maintaining its customer relationships or its employees. Moreover, caselaw suggests two-year covenants are unreasonable in Arizona. *See e.g.*, *Wadlund*, 2022 WL 18495279, at *14 (finding that plaintiff is unlikely to demonstrate 18-month duration is reasonable); *Zep*,

1   2010 WL 1381896, at *5 (finding one-year period in customer non-solicitation covenant

2   unreasonable); *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 980 (D. Ariz. 2006) ("The

3   Court is also persuaded that under Arizona law, two years is unreasonable.").

4      Although the Court could "blue pencil" these covenants to make them enforceable,

5   FSEC has neither requested nor argued so. And given that it is FSEC's burden to

6   demonstrate likelihood of success in establishing the enforceability of these covenants, the

7   Court declines to "blue pencil" them on its own and without arguments from either side.[2]

8   *See Wadlund*, 2022 WL 18495279, at *14 ("It might be possible to "blue pencil" this

9   provision to make it enforceable, but Plaintiff has not offered a suggestion in this regard

10  and the Court is unwilling to blue-pencil the agreement without hearing specific

11  suggestions from both sides first.").

12             **B.  Irreparable Harm**

13     FSEC asserts two irreparable harms: (1) the loss of customer relationships and (2)

14  the continued disclosure of its confidential and trade secret information. The Court finds

15  that both asserted harms are the type appropriate for injunctive relief. *See E\*Trade*

16  *Financial Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1036 (D. Ariz. 2018) (finding that "the

17  loss of follow-on business, goodwill and reputation" constitute irreparable harms); *Saini v.*

18  *Int'l Game Tech.*, 434 F. Supp. 2d 913, 919 (D. Nev. 2006) (finding that "disclosure of

19  confidential information or trade secrets would create irreparable injury").

20     The question then is whether FSEC is *likely* to suffer such harms absent injunctive

21  relief. The evidence reflects that FSEC revoked Nye and Boone's access to the FSEC's

22  Building Reports in October 2023. Thus, there is no immediate risk that either of them will

23  be able to access the online portal and view reports. That said, there is evidence that 22

24  Reports were downloaded prior to that revocation, so any risk of harm would be based on

25  the continued use and disclosure of those 22 Building Reports. The Court finds this

26

27  [2] The Court need not reach whether the restrictive covenants are severable from the
Boone's Employment Agreement (thereby preserving FSEC's contract claim based on

28  breach of the confidentiality provision) because any injunctive relief based on Boone's
confidentiality breach coincides with the injunctive relief based on the misappropriation of
trade secrets claims.

sufficient to support a finding of likely irreparable harm.

However, FSEC does not make a strong showing of likely irreparable harm based on the loss of customer relationships. Evidence at the hearing suggests that FSEC has been in business for 44 years and, over that period, has worked with more than a thousand different customers. The evidence also suggests that since Nye and Boone's termination, FSEC's business has continued to grow and that in 2023 alone, its revenue approximated $11 million. As to its harms, FSEC has only demonstrated a partial—not total—loss of business with three clients, which seems to pale in comparison to its robust customer list. Thus, given FSEC's healthy financial state and breadth of customers, the Court is not persuaded that FSEC is likely to suffer an irreparable loss of goodwill and reputation amongst its customers as a result of Nye and Boone allegedly having access to only 22 Building Reports.

In sum, the Court finds only the threat of use and disclosure of FSEC's confidential and trade secret information justifies granting a preliminary injunction here.

### C. Balance of Harms & Public Interest

The injunctive relief FSEC proposes is overly broad, disproportionate to the likely harms, and excessively intrusive. FSEC requests, in part, the following relief:

> Nye is prohibited from soliciting or taking any action that would interfere, diminish, impair, or adversely affect FSEC's relationship with any customers until after March 7, 2024, which is six months after the termination of his employment with FSEC.

> Boone is prohibited from soliciting or taking any action that would interfere, diminish, impair, or adversely affect FSEC's relationship with any customers until after February 13, 2025, which is two years after the termination of his employment with FSEC.

(Doc. 4-3.) FSEC also requests that the Court order Nye and Boone to (1) identify and deliver to a forensic expert all electronic devices (including personal cell phones and laptops) and accounts (such as emails and file share accounts) along with usernames and passwords and (2) pay for the forensic expert to go through such devices and accounts and then identify and delete FSEC's confidential information and trade secrets.

FSEC's request for relief, as proposed, would tip the balance of hardships in Nye and Boone's favor and would be against public policy. For one, the prohibition on Nye and Boone's ability to take *any* action that could interfere with FSEC's relationship with its customers would impose a significant hardship on their ability to continue in their jobs at ADANAC. Nye would seemingly be prohibited from inspecting any customer's facilities if that customer also happens to be one of FSEC's. Similarly, Boone would be prohibited from assigning any technician or inspector onto a job for a customer that also happens to be soliciting work from FSEC. FSEC has not attached a list of specific customers for Nye and Boone to avoid working with and, as mentioned, FSEC's customer list approximates close to a thousand different customers.

Second, the irreparable harm that is likely here is the continued disclosure and use of the 22 Building Reports downloaded prior to October 2023. Requiring Nye and Boone to turn over *all* of their personal devices and accounts is excessively intrusive and may indeed impact some non-parties, such as ADANAC who may have issued Nye and Boone devices and accounts as part of their work. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002) ("The public interest inquiry primarily addresses [the] impact on non-parties rather than parties.").

That said, entering a narrower preliminary injunction than requested would safeguard FSEC's confidential and trade secret information and any hardship to Nye and Boone would be limited to refraining from using, disclosing, or destroying any such information. If, as Nye and Boone claim, they indeed do not have and are not using FSEC's information, the preliminary injunction wouldn't require them to do anything differently nor would it impede their ability to continue working at ADANAC. Thus, a narrower injunction would tip the balance of hardships in favor of FSEC. Indeed, "[i]njunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion." *Winter*, 508 F.3d at 886.

Accordingly, given FSEC's likelihood of success on the merits of its claims—that is (1) the DTSA and AUTSA claims, and (2) Boone's breach of confidentiality claim—

and given FSEC's likelihood of irreparable harm from the continued use and disclosure of its confidential and trade secret information, the Court finds that FSEC is entitled to the following preliminary injunction against Nye and Boone: (1) Nye and Boone are prohibited from using, transmitting, copying, distributing, or otherwise directly or indirectly benefitting from FSEC's confidential information and trade secrets; (2) Nye and Boone are prohibited from deleting, destroying, or otherwise making unavailable for further proceedings any records or documents, if any, including data or information maintained on a computer or electronic device, that contains FSEC's confidential information and/or trade secrets; and (3) within five days of this order, Nye and Boone are ordered to return to FSEC's counsel all records or documents, whether original, copied, or computerized, within their possession, if any, containing FSEC's confidential information and/or trade secrets.

### D. Security

Federal Rule of Civil Procedure 65(c) "invests the district court with discretion as to the amount of security required, *if any*" in issuing a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Generally, the security required is "in an amount that the [C]ourt considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Given that the Court has considerably narrowed the scope of the injunction and that it only prohibits Nye and Boone from engaging in conduct they otherwise were prohibited from doing under the law, the Court finds no security is necessary here.

**IT IS ORDERED** that FSEC's motion for preliminary injunction (Doc. 4) is **GRANTED** in part as follows:

1) Defendants Nicholas Nye and Christopher Boone are prohibited from using, transmitting, copying, distributing, or otherwise directly or indirectly benefitting from FSEC's confidential information and trade secrets.

2) Defendants Nicholas Nye and Christopher Boone are prohibited from deleting, destroying, or otherwise making unavailable for further proceedings any records or

documents, if any, including data or information maintained on a computer or electronic device, that contains FSEC's confidential information and/or trade secrets.

3) Within five days of this order, Defendants Nicholas Nye and Christopher Boone are ordered to return to FSEC's counsel all records or documents, whether original, copied, or computerized, within their possession, if any, containing FSEC's confidential information and/or trade secrets.

4) This preliminary injunction shall remain in effect during the pendency of this case or until further order of the Court.

Dated this 13th day of February, 2024.

_____
Douglas L. Rayes
United States District Judge